IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASON SPIELER, by his guardian <u>ad litem</u>, ALISON J. SPIELER,<br><br>         Plaintiff,<br><br>    v.<br><br>MT. DIABLO UNIFIED SCHOOL DISTRICT,<br><br>         Defendant.<br>                                              / | No. C 98-0951 CW<br><br>ORDER ADOPTING IN PART PLAINTIFF'S PROPOSED REMEDIAL ORDER |

    On May 1, 2007, the Court granted Plaintiff Jason Spieler's motion for enforcement of the consent decree.  Plaintiff and Defendant Mt. Diablo Unified School District were ordered to meet and confer regarding an appropriate remedy.  The parties could not reach an agreement and both sides submitted proposed remedial orders.  The matter of an appropriate remedy was heard on June 21, 2007.  Having considered all of the papers filed by the parties and oral argument, the Court adopts in large part Plaintiff's proposed order.

BACKGROUND

In 2000, the parties entered into a consent decree that resolved a class action, alleging a denial of Plaintiff's and other class members' right to full and equal access to Defendant's facilities and programs. The agreement provided, in part,

> The Parties agree that all playboxes shall be made minimally accessible by providing new surfacing under the "use zone" of the playboxes at a cost of approximately $10,000 per site as Priority 1 work. Exceptions would be Gregory Gardens, Shadelands, and Sunrise Center for which the entire playbox will be made accessible as Priority 1 work. The Parties further agree that the remainder of the costs currently designated as "playbox access" shall be included as Priority 2 work. Should new regulations pertaining to playbox access be issued, the parties [sic] will meet and confer regarding any changes necessary in this agreement.

Consent decree, § III.A.3. According to the Self-Evaluation and Transition Plan, attached as Exhibit B to the consent decree, the estimated total cost of playbox access, including Priority 1 and Priority 2 work, was $1,800,000.

Pursuant to the consent decree, Defendant fixed its playboxes to make them minimally accessible to mobility-disabled children. Defendant replaced the surface of some playboxes with a rubberized surface; it replaced the surface of other playboxes with engineered wood fiber (EWF).[1]  According to Defendant, it costs at least $85,000 to install a rubberized surface in a playbox, far more than it costs to install EWF.

In 2005, the parties disputed whether the district had satisfied its obligation under the consent decree concerning the

---

[1] According to Defendant's Assistant Superintendent for Administrative Services, there are currently thirty-two playboxes in the Mt. Diablo Unified School District that contain EWF.

2

playboxes. After meeting with a magistrate judge, the parties entered into an interim settlement agreement to resolve whether the use of EWF, as maintained by Defendant, satisfied the requirements of the consent decree. This agreement required Defendant to pay a neutral observer to observe the condition of the EWF in the playboxes during the 2005-2006 school year.

If the parties were unable to resolve their disagreements, after meeting and conferring about the year-long observations, they would bring their dispute to the Court. Each party would submit a single letter brief to the Court, no longer than five pages. The agreement provided for limited briefing; there was to be no evidentiary hearing. Under the agreement, after reviewing the letter briefs and observations of the observer, the Court would determine whether Defendant satisfied the requirements of the consent decree and, if necessary, would order an appropriate remedy. If the Court determined that Defendant must remove and replace EWF surfacing in whole or in part, Defendant could "(1) phase in installation of the prescribed surfacing over a period of three years and replace at least one playbox at each school site within the first year after the Court's order; or (2) install a bonded EWF product within three years of the Court's order and a formal Court confirmation that the use of a bonded EWF product complies with the Consent Decree and all applicable laws."[2]

The parties did not reach an agreement. On March 2, 2007,

---

[2] Bonded EWF has yet to be determined to be ADA compliant, nor has it been certified as compliant with the American Society for Testing and Material standards for accessibility of playbox surfacing.

3

pursuant to the interim settlement agreement, the parties filed letters with the Court concerning whether Defendant had satisfied its obligations with regard to the maintenance of the EWF in the playboxes. Plaintiff argued that Defendant did not and moved for enforcement of the consent decree. Defendant argued that it had satisfied its obligations and that its maintenance of the EWF was satisfactory and sufficient. The observations did show steady improvement by Defendant. Nonetheless, there were still instances, even at the end of the school year, where the surfaces in the playboxes exceeded a slope found to be accessible for children with disabilities.

On May 1, 2007, the Court granted Plaintiff's motion for enforcement of the consent decree. The Court concluded that, with respect to the use of EWF in the playboxes as maintained by Defendant, Defendant violated the terms of the consent decree. The parties were ordered to meet and confer to attempt to agree upon a remedy. If the parties could not agree, they were ordered to submit proposed remedial orders. The parties did not agree and each side submitted its own proposed order. After the hearing on June 21, 2007, Defendant submitted a supplemental opposition.[3]

## DISCUSSION

Plaintiff's proposal requires the district to replace the EWF surfacing with an approved rubberized surfacing in eighty percent

---

[3] The parties' agreement does not provide for such supplemental briefing, nor was it requested by the Court. The Court, however, reviewed the supplemental opposition. Because it did not affect the outcome, the Court did not give Plaintiff an opportunity to respond.

4

of the playboxes within four years and to continue its maintenance program with respect to playboxes that have EWF surfacing. Unless a parent complains about a particular playbox, Plaintiff's proposal grants the district control over prioritizing which playboxes receive the rubberized surfacing, so long as twenty-five percent of the total playboxes designated to receive new surfacing are completed each year. If a parent complains about accessibility related to EWF surfacing in a particular playbox, the district must replace the surfacing of that playbox within one year. Plaintiff contends that its proposed remedy is fair, moderate and, in several respects, more lenient than that provided in the interim settlement agreement. It gives Defendant four years, instead of three, and requires replacement of only eighty percent of the playboxes.

Defendant's proposal requires that it continue its current maintenance plan for playboxes with EWF surfacing and that it offer an intra-district transfer to any student with a mobility disability attending a school without rubberized surfacing playboxes, if the student requests such a transfer. Defendant notes that it has thirty-one elementary schools, seventeen of which have at least one play box containing rubberized surfacing, and that four students with mobility disabilities attend schools that do not have a playbox with rubberized surfacing.

Defendant argues that it is not obliged under the consent decree to install rubberized surfacing in all playboxes and that ordering it to do so would result in an undue financial burden. As Defendant notes, to do so would require it to spend far more than the $1,800,000 allotted for playbox access. The consent

5

decree did not mandate what type of surfacing must be installed, other than that it had to be accessible. Nonetheless, in January, 2003, Logan Hopper, the consent decree monitor, concluded that his inspections of EWF surfacing have "shown that this surfacing has failed, on a consistent basis, to meet the performance standards referenced above at the time of inspection." Macy Dec., Ex. B, p.4. Thus, he "strongly recommended that the existing installations of this type of surfacing be phased out and replaced with rubberized matting, a material which has been shown to meet the standards during site inspections, as soon as is feasible." Id. And, when Defendant signed the interim settlement agreement in 2005, it agreed that, if it did not maintain accessible surfaces and the Court determined that Defendant must remove and replace EWF surfacing in whole or in part, it would do so within three years.

Defendant has been on notice for over four years that its maintenance of the EWF does not make the playboxes accessible as required by the consent decree. It was given an opportunity to prove that it could maintain the EWF, providing accessible playboxes. But, as noted above, even at the end of the school year, there were still slope violations. The Court concludes that Defendant must replace the EFW surfacing in the use zone of the playboxes with an approved rubberized surfacing. Plaintiff's proposed remedial order is reasonable and, as noted above, in several respects, more lenient than that provided in the interim settlement agreement. Thus, the Court adopts in large part Plaintiff's proposed remedial order.

6

CONCLUSION

Plaintiff's proposed remedial order provides that Defendant shall have four years to replace EWF surfacing with an approved rubberized surfacing in eighty percent of its playboxes. In light of Defendant's alleged financial constraints, the Court shall give Defendant another year to complete the replacement. Therefore, within five years, Defendant shall replace EWF surfacing in the use zone of eighty percent of its playboxes with an approved rubberized surfacing. Although the Court recommends that Defendant replace EWF surfacing in playboxes where Defendant knows students with mobility disabilities will be playing, Defendant shall have control over prioritizing which playboxes receive new surfacing so long as twenty percent of the total playboxes designated to receive new surfacing are completed each year. The replacement of EWF surfacing in the first group of playboxes shall be completed by the beginning of the 2008-2009 school year. Should a parent complaint to Defendant, to a school within Defendant's control or to Plaintiff's counsel concerning accessibility problems relating to EWF surfacing in a particular playbox, Defendant must replace the surface of that playbox within one year. Defendant must also continue to maintain any playboxes that contain EWF surfacing pursuant to the maintenance plan implemented during the 2005-2006 school year.

The parties are ordered to meet and confer concerning attorneys' fees. If they are unable to resolve the attorneys' fees issue or to agree on an alternate mechanism for resolving the dispute, Plaintiffs shall submit an application for attorneys' fees

to this Court.  That application must be submitted within thirty days from the date of this order.

    IT IS SO ORDERED.

Dated: 8/16/07

CLAUDIA WILKEN
United States District Judge