1

2

3

4               IN THE UNITED STATES DISTRICT COURT

5

6          FOR THE NORTHERN DISTRICT OF CALIFORNIA

7                                        No. C 98-0951 CW

8  JASON SPIELER, by his guardian ad
   litem, ALISON J. SPIELER,          ORDER DENYING
9                                      DEFENDANT'S MOTION
            Plaintiff,                 FOR A STAY PENDING
10                                     APPEAL

11      v.

   MT. DIABLO UNIFIED SCHOOL DISTRICT,
12
            Defendant.
13  _____/

14

15      Defendant Mount Diablo Unified School District moves for a

16  stay of the Court's remedial order pending a decision on

17  Defendant's appeal to the Ninth Circuit.  Plaintiff opposes

18  Defendant's motion.  The matter was taken under submission on the

19  papers.  Having considered all of the papers submitted by the

20  parties, the Court denies Defendant's motion.

21                           BACKGROUND

22      Plaintiff brought this action alleging a denial of his and

23  other class members' right to full and equal access to Defendant's

24  facilities and programs.  In 2000, the parties entered into a

25  consent decree that resolved the matter.  The agreement provided,

26  in part, that:

27      The Parties agree that all playboxes shall be made
        minimally accessible by providing new surfacing under the
28      "use zone" of the playboxes at a cost of approximately

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

> $10,000 per site as Priority 1 work.  Exceptions would be
> Gregory Gardens, Shadelands, and Sunrise Center for which
> the entire playbox will be made accessible as Priority 1
> work.  The Parties further agree that the remainder of
> the costs currently designated as "playbox access" shall
> be included as Priority 2 work.  Should new regulations
> pertaining to playbox access be issued, the parties will
> meet and confer regarding any changes necessary in this
> agreement.

Consent Decree § III.A.3 (Docket No. 34).  The agreement did not

define the term "minimally accessible."  It did, however, refer to

the "minimum accessibility features" contained in the Logan Hopper

Report, which was attached as Exhibit C to the consent decree.  Id.

§ III.A.2.  With respect to playboxes, the Report stated only that

an "absolute minimum degree of accessibility" required "[a]t least

one accessible play structure, representative of the types of play

structures provided at the site, for each student level at each

site, including path of travel and surfacing beneath it."  Id. Ex.

C at 7.

Defendant attempted to comply with the consent decree by

replacing the surfaces of some playboxes with a rubberized

material; it replaced the surfaces of other playboxes with

engineered wood fiber (EWF).  According to Defendant, it currently

costs approximately $85,000 to install a rubberized surface in a

playbox, far more than it costs to install EWF.  Defendant expects

this cost to rise to approximately $100,000 over the course of the

next five years.  Plaintiff disputes this amount.

In 2005, the parties disputed whether Defendant had fulfilled

its obligations under the consent decree.  After meeting with a

magistrate judge, the parties entered into an interim settlement

agreement to resolve whether the use of EWF, as maintained by

2

United States District Court
For the Northern District of California

Defendant, satisfied the requirements of the consent decree.  This agreement required Defendant to pay a neutral observer to observe the condition of the EWF in the playboxes during the 2005-2006 school year.

The agreement further provided that if the parties were unable to resolve their disagreements after meeting and conferring about the year-long observations, they would bring their dispute to the Court.  In the event of such a dispute, the agreement provided for limited briefing; each party would submit a single letter brief to the Court, no longer than five pages.  There was to be no evidentiary hearing.  Under the agreement, after reviewing the letter briefs and observations of the neutral observer, the Court would determine whether Defendant had satisfied the requirements of the consent decree and, if necessary, would order an appropriate remedy.  If the Court determined that Defendant must remove and replace EWF surfacing in whole or in part, the agreement provided that Defendant could either "(1) phase in installation of the prescribed surfacing over a period of three years and replace at least one playbox at each school site within the first year after the Court's order; or (2) install a bonded EWF product within three years of the Court's order and a formal Court confirmation that the use of a bonded EWF product complies with the Consent Decree and all applicable laws."[1]

On March 2, 2007, pursuant to the interim settlement

_____

[1]Bonded EWF has yet to be determined to be ADA compliant, nor has it been certified as compliant with the American Society for Testing and Material standards for accessibility of playbox surfacing.

United States District Court
For the Northern District of California

agreement, the parties filed letters with the Court concerning their dispute over whether Defendant had satisfied its obligations with regard to the maintenance of the EWF in the playboxes. Plaintiff argued that Defendant had not, and moved for enforcement of the consent decree. Defendant argued that it had satisfied its obligations and that its maintenance of the EWF was satisfactory and sufficient. The observations did show steady improvement by Defendant. Nonetheless, there were still instances, even at the end of the school year, where the surfaces in the playboxes exceeded a slope found to be accessible for children with disabilities. This was so even though Defendant was aware that its compliance was being monitored.

On May 1, 2007, the Court granted Plaintiff's motion for enforcement of the consent decree. The Court concluded that, with respect to the use of EWF in the playboxes as maintained by Defendant, Defendant had violated the terms of the consent decree. The parties were ordered to meet and confer to attempt to agree upon a remedy. If the parties could not agree, they were ordered to submit proposed remedial orders. The parties did not agree and each side submitted its own proposed order.

In an order dated August 16, 2007, the Court adopted in part Plaintiff's proposed remedial order. It found that Defendant had been given an extensive opportunity to demonstrate that it could maintain its EWF playboxes in a way that complied with the consent decree, but had failed to prevent ongoing slope violations. The Court concluded that Defendant must replace its EFW surfacing with rubberized surfacing. The remedial order required Defendant to

4

replace the surfacing in eighty percent of its playboxes over a period of five years, with twenty percent of these playboxes undergoing replacement each year.  Defendant appealed this order to the Ninth Circuit and now requests that it be stayed until the appeals court issues its decision.

LEGAL STANDARD

Rule 62(c) of the Federal Rules of Civil Procedure provides that "[w]hen an appeal is taken from an interlocutory or final judgment granting, dissolving, or denying an injunction, the court in its discretion may suspend, modify, restore, or grant an injunction during the pendency of the appeal."  The standard for granting a stay pending appeal is similar to that for a preliminary injunction.  Lopez v. Heckler, 713 F.2d 1432, 1435 (9th Cir. 1983). Thus, a party seeking a stay must show either (1) a likelihood of success on the merits of its appeal and the possibility of irreparable harm, or (2) that serious questions regarding the merits exist and the balance of hardships tips sharply in its favor.  See Lands Council v. McNair, 494 F.3d 771, 775 (9th Cir. 2007).  "These two alternatives are extremes of a single continuum in which the greater the relative hardship to the party seeking the [stay], the less probability of success must be shown."  Id. (internal quotation marks omitted).  In cases such as this one, the court should also consider the effect on the public interest of granting the stay.  Lopez, 713 F.2d at 1435.

When ruling on a motion for a stay of a final judgment, the district court will already have ruled on the legal issue being appealed.  When evaluating the movant's likelihood of success on

5

the merits in this context, the court need not conclude that it is likely to be reversed on appeal in order to grant the stay. <u>Strobel v. Morgan Stanley Dean Witter</u>, 2007 WL 1238709, at *1 (S.D. Cal. 2007).  Rather, it may grant the stay when it has ruled on "an admittedly difficult legal question and when the equities of the case suggest that the status quo should be maintained."  <u>Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.</u>, 559 F.2d 841, 844-45 (D.C. Cir. 1977).

DISCUSSION

I.   Likelihood of Success on the Merits

   Defendant has appealed the Court's finding that its failure to maintain the accessibility of its EWF playboxes violated the terms of the consent decree.  Specifically, Defendant argues that the Court erred by allegedly interpreting the term "minimally accessible" to require "absolute perfection in the maintenance of District playbox surfaces."  Defendant also maintains that the Court erred in finding that the playboxes were not accessible, because no students have complained of accessibility problems.  In its reply, Defendant further states that the Court found the use of EWF in playboxes to be non-compliant with the ADA.  Defendant argues that this represents a novel holding and will present an important legal issue of first impression on appeal.

   The Court notes that the relevant language of the consent decree is ambiguous with respect to the measures Defendant was ultimately expected to take to make the playboxes accessible. However, it is clear that the phrase "minimally accessible" was employed only as a means of identifying work that was required to

be designated as Priority 1.  The "remainder of the costs currently designated as 'playbox access,'" in turn, were to be designated as Priority 2.  Despite repeated questioning by the Court at oral argument, the parties could not assign a precise meaning to the phrase, "costs currently designated as 'playbox access.'"  In any event, Defendant is incorrect in its assertion that the Court found its playboxes not to be "minimally accessible."  The Court did not apply a "minimal accessibility" standard in its previous orders, because such a standard was not contemplated by the consent decree. Nor did the Court require absolute perfection.  Defendant has not supported its argument that the consent decree required only that the playboxes be "minimally accessible."  Therefore, Defendant's likelihood of success on this point is small.

As for Defendant's argument that its playboxes cannot be found inaccessible because no students have complained of as much, Defendant provides no authority for the proposition that consent decree compliance or accessibility should depend on whether students have formally complained.

Finally, while Defendant attempts to cast the Court's order as holding that the use of EWF in playboxes does not comply with the ADA, the order merely held that Defendant's maintenance of its EWF-filled playboxes did not comply with the terms of the consent decree in this case.  Thus, the Court's order did not establish a broad legal principle and will not constitute a "serious issue of first impression" on appeal, as Defendant contends.

In sum, Defendant has not presented the Court with any argument that has a high likelihood of success or raises a

United States District Court
For the Northern District of California

difficult legal question such that granting a stay in this case would be appropriate.

II.   Balance of Hardships

Defendant argues that it would be irreparably harmed if the Court were not to grant a stay of the remedial order.  It is true that Defendant may have to pay to install rubberized surfaces in some of its playboxes while its appeal is pending.  The cost of this replacement is disputed by the parties; Defendant claims it will cost between $85,000 to $100,000 per playbox, while Plaintiff claims it can be done for less than $57,000 for even a large-sized play area.  Whatever the cost of replacing the playbox surfaces, it will be spread out over a period of five years.  This allows Defendant more time to comply than Plaintiff's recommendation, which in turn allowed Defendant more time than it had agreed to in the interim settlement agreement.  Thus, the magnitude of the financial burden on Defendant is reduced by the high likelihood that the court of appeals will issue its decision before a majority of the playbox surfaces have been replaced.  Further, Defendant will derive some benefit from providing disabled children in its charge with accessible equipment.

In contrast, any further delay in making Defendant's playboxes accessible will subject Plaintiff and other class members to segregation based on their disabilities.  This harm cannot be quantified and is, by its very nature, irreparable.  See Silver Sage Partners, Ltd. v. City of Desert Hot Springs, 251 F.3d 814, 827 (9th Cir 2001) ("We have held that where a defendant has violated a civil rights statute, we will presume that the plaintiff

8

has suffered irreparable injury from the fact of the defendant's violation.") (citing Smallwood v. Nat'l Can Co., 583 F.2d 419, 420 (9th Cir. 1978)).  In addition, the public interest favors Defendant's prompt provision of accessible playboxes so that all of its students may have an equal opportunity to participate in developmental recreational activities.

     For these reasons, the Court concludes that the balance of hardships tilts in Plaintiff's favor.  Considering this with Defendant's low likelihood of success on the merits, the Court is not persuaded that the equities at stake would be served by exercising its discretion to stay the remedial order.

CONCLUSION

     For the foregoing reasons, Defendant's motion (Docket No. 151) for a stay of the Court's remedial order of August 16, 2007 pending a decision on Defendant's appeal is DENIED.[2]

     IT IS SO ORDERED.


Dated:11/2/07

CLAUDIA WILKEN
United States District Judge

_____

     [2]Plaintiff's motion to strike and Defendant's objections to certain portions of the declarations submitted in connection with this motion (Docket Nos. 162, 168 and 169) are DENIED as moot.  The Court did not consider any improper or inadmissible evidence in deciding this motion.

United States District Court
For the Northern District of California

9